IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **CALVIN BUFFINGTON,** <br><br> Petitioner, <br><br> v. <br><br> **UNITED STATES OF AMERICA,** <br><br> Respondent. | Case No. 16 C 8632 <br><br> Judge Harry D. Leinenweber |

**MEMORANDUM OPINION AND ORDER**

Petitioner Calvin Buffington's ("Buffington") Motion for Relief under 18 U.S.C. § 3582(c)(2) [ECF No. 1] is denied.

**I.  BACKGROUND**

This case raises the question of what to do when a defendant's Presentence Investigation Report ("PSR") adopted by the Court in sentencing turns out to be internally inconsistent. The answer matters for Buffington because, if one drug quantity from the PSR is used as the factual basis for his original sentence, then he is eligible for a sentence reduction under 18 U.S.C. § 3582(c)(2). But if another, irreconcilably different drug quantity from the same report is used, then his sentence must stand as is.

To begin near the beginning, in 2011, this Court sentenced Buffington to a prison term of 238 months for his role in running a wholesale drug distribution ring. *See, United States*

*v. Buffington,* No. 07-CR-00410, ECF No. 1006 (Judgment) (N.D. Ill. Mar. 18, 2011). Evidence before the Court established that Buffington was the leader of the enterprise and that his scheme sucked in the people closest to him, all of whom were charged and sentenced as participants in the organization. Buffington's co-conspirators included his mother, who raised him and his siblings in difficult circumstances; his brother, whom Buffington knew to be a crack addict; his cousins; a girlfriend, a college buddy, and various others. (Among the uncharged individuals were the mothers of Buffington's three children, whom the Government said Buffington used to funnel the illicit funds of his criminal enterprise.)

The enterprise itself was no "dime bags on a corner" operation. Buffington and his cohorts dealt in wholesale quantities of drugs, running a trafficking organization that lasted for years. During the life of the enterprise, Buffington – and others at his direction – stored, packaged, processed, restocked, moved, sold, and otherwise distributed cocaine and heroin across state lines from Chicago to Detroit.

The exact amount of drugs for which Buffington was responsible is important for the present Motion. During the sentencing hearing, however, the Court did not commit to any particular drug quantity. The closest the Court came to stating

a numerical value was when it said, right before imposing sentence, that "the nature and circumstances of the offense" were "very, very, very serious," "involving perhaps up to 1,000 kilograms of cocaine." *See, Buffington,* No. 07-CR-00410, ECF No. 1074 (S. Tr.) at 52:13-18. Earlier in the proceeding, the Court stated that it had received the PSR and asked the parties if they thought the report was accurate. Neither Buffington nor the Government disputed the drug quantities found in the report. Both agreed that based on the amounts involved, Buffington's base offense level was 38.

The PSR, however, contained three different sets of numbers as to the drug quantities. First, the report broke down in detail the amount of drugs that Buffington received from his known suppliers during the period stretching from 2003 to 2007. This summed up to 978 kilograms (kg) of cocaine and 3 kg of heroin. As converted to a common unit, 978 kg of cocaine and 3 kg of heroin equaled 198,600 kg of marijuana. *See,* 18 U.S.C. App. § 2D1.1, Drug Equivalency Tables (stipulating that 1 gram (g) cocaine = 200 g marijuana and 1 g heroin = 1 kg marijuana). Second, and irreconcilable with the first set of numbers, the PSR stated that Buffington's offense level was 38 "because the amount of controlled substances involved in the offense for which the defendant is accountable is approximately 364

kilograms of cocaine and 1,800 grams of heroin." *Buffington v. United States,* 16-CV-08632, ECF Nos. 1 at 3-4 (Motion) & ECF No. 8 (Gov't Resp.) at 3. Third, the PSR stated that "these controlled substances are equivalent to 180,411 kilograms of marijuana." *Id.* But neither pair of numbers that the PSR mentioned computed to 180,411 kg of marijuana. As noted, 978 kg of cocaine and 3 kg of heroin were equivalent to 198,600 kg of marijuana. At the same conversion rate, 364 kg of cocaine and 1,800 g of heroin equaled 74,600 kg of marijuana.

Despite the discrepancies, the parties made no objection to the drug quantities reported. This probably was due to the fact that under the then-prevailing Sentencing Guidelines, any amount of cocaine over 150 kg would put a defendant at an offense level of 38. *See,* 18 U.S.C. app. § 2D1.1, Drug Quantity Table (2011). Thus, the smaller reported amount of 364 kg of cocaine alone would make Buffington a level 38 offender, the base level at which he was sentenced. (To be precise, Buffington was sentenced at a final-computed offense level of 39. This is because on a base level of 38, Buffington got a four-level increase for being the leader in a criminal activity involving five or more persons and a three-level decrease for accepting responsibility. Because these adjustments are not relevant for the current motion, the Court focuses on the base level.) In

the Statement of Reasons issued after the sentencing hearing, the Court checked the box indicating that it adopted the PSR in full without change.

Due to a change to the Sentencing Guidelines, the discrepancies in the drug quantities found in the PSR now matter. In 2014, the Sentencing Commission promulgated Amendment 782, since then made retroactively applicable, that served to lower the offense levels for certain drug crimes. The amendment accomplished this by raising the threshold drug quantity that an offender needs to be sentenced at a particular level. Now, a person must be responsible for at least 450 kg of cocaine to be a level 38 offender, whereas a person responsible for less than 450 kg of cocaine but more than 150 kg is a level 36 offender. *See,* 18 U.S.C. app. § 2D1.1, Drug Quantity Table.

Buffington thus argues that, if sentenced today, he would be a level 36 offender, and not a level 38. On this basis alone, he presses for a 28-month reduction in his sentence. The argument, however, hinges on Buffington being "credited" with the lowest of the three drug quantities that the PSR reported. Only if this quantity (364 kg of cocaine and 1,800 g of heroin) is used would Buffington be a level 36 offender. Buffington's base offense level would remain unchanged at 38 if either of the

two other quantities (978 kg of cocaine and 3 kg of heroin; or 180,411 kg of marijuana) is adopted instead.

For the reasons detailed below, the Court finds that Amendment 782 had no effect in lowering Buffington's guideline range. Accordingly, the Court is not authorized to grant Buffington a sentence reduction. Furthermore, even if it had the authority, the Court would exercise its discretion and deny Buffington the 28-month reduction in sentence he seeks. Succinctly put, Buffington has not supplied the Court with any reason to lessen his punishment since it first sentenced him.

## II.  **ANALYSIS**

The present Motion is brought under 18 U.S.C. § 3582(c)(2). This section of the penal code provides federal courts with limited authority to reduce a sentence of imprisonment after it has been imposed. *See,* 18 U.S.C. § 3582(c); *Dillon v. United States,* 560 U.S. 817, 819 (2010). It states,

> [I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . ., the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(2). The text of the statute makes clear that the Court may reduce the term of imprisonment only where

the original term was "based on a sentencing range that has subsequently been lowered" and where "such a reduction is consistent with applicable policy statements." *Id.* Only after the Court determines that these threshold requirements have been met does it then consider whether "the authorized reduction is warranted, either in whole or in part, according to the factors set forth in § 3553(a)." *Dillon,* 560 U.S. at 826.

The procedure for the Court to follow in ruling on a § 3582(c)(2) motion thus is a two-step inquiry. *See, Dillon,* 560 U.S. at 825-26. In step one, the Court asks whether it has the authority to grant a sentence reduction. If the answer is yes, the Court then proceeds to step two, considers the § 3553(a)'s factors, and decides whether to reduce the defendant's sentence. The Court performs this analysis step-by-step below.

### A. Whether a Reduction in Setence Is Authorized

The Court finds that it lacks the authority to grant Buffington a sentence reduction. Recall that Buffington is here relying on Amendment 782 to argue for such a reduction. The applicable policy statement specifies that "[a] reduction in the defendant's term of imprisonment is not . . . authorized under 18 U.S.C. § 3582(c)(2) if [Amendment 782] does not have the effect of lowering the defendant's applicable guideline range."

*See,* 18 U.S.C. app. § 1B1.10(a)(2) & (d). As explained above, Amendment 782 does not lower Buffington's guideline range (from 38 to 36) unless the Court finds that a specific drug quantity from the PSR, internally inconsistent with other quantities reported, is the amount of controlled substances for which he was responsible.

To determine whether this is the amount of drugs that properly should be attributed to Buffington, the Court first asks if it has already made such a finding at his sentencing. If the Court previously found Buffington to be responsible for exactly 364 kg of cocaine and 1,800 g of heroin, then it may not now make any other finding inconsistent with that quantity. *See, United States v. Dewayne Hall,* 600 F.3d 872, 876 (7th Cir. 2010) ("[I]n deciding a sentence-reduction motion pursuant to § 3582(c), the district court may not make factual findings that are inconsistent with those made during the original sentencing."). After combing the record, the Court concludes that it did not make a finding as to the exact amount of drugs that Buffington distributed.

Instead, the Court found that Buffington was responsible for an amount of drugs qualifying him to an offense level of 38 under the Guidelines applicable at the time of his sentencing. During the sentencing hearing, the Court stated that the offense

level was 38 without mentioning any specific drug quantity. *See,* S. Tr. 7:2-9 ("The Court: The base offense level is 38. Ms. Winslow, does defense agree with that? Ms. Winslow: We're not disputing it. The Court: All right. And the government agrees that it's 38? Ms. Reynolds: That's correct."). The only numerical figure to issue from the Court was that Buffington's offense involved "perhaps up to 1,000 kilograms of cocaine."

It is true that the PSR, unlike the Court, committed to specific drug amounts. In particular, the PSR stated that Buffington's "Base Offense Level is 38, because the amount of controlled substances involved in the offenses for which the Defendant is accountable is approximately 364 kilograms of cocaine and 1,800 grams of heroin." ECF No. 1 at 3-4. It is also true that the Court adopted the PSR in its Statement of Reasons. However, the Court adopted the PSR in its entirety, and the PSR included not only the quantities on which Buffington now relies but also the higher quantities of 978 kg of cocaine and 3 kg of heroin, as well as the 180,411 kg of marijuana figure.

Even assuming for the moment that one of the numbers from the PSR should be treated as the exact amount of drugs the Court deemed Buffington to have distributed, the Court is not

convinced as to why this number should be the lowest drug quantity of 364 kg of cocaine and 1,800 g of heroin.  Buffington asserts that the Court cannot deviate from these figures because to correct the numbers to anything else would be a substantive correction outside the scope of Federal Rule of Criminal Procedure 36.  But his argument assumes that these numbers are the substantive quantities, while the other numerical values are either incorrect mathematical conversions – to be corrected in Buffington's favor – or things to be ignored.  It may be just as sensible, however, to treat the 364 kg of cocaine and 1,800 g of heroin numbers as scrivener's errors and the 978 kg of cocaine and 3 kg of heroin as the original, "true" figures that the scrivener poorly transcribed.  These higher quantities are factually supported as the sum of the drug transactions that Buffington had with his dealers during the time when his criminal enterprise was active.  The 364 kg of cocaine and 1,800 g of heroin numbers, on the other hand, seem to have no support.

Put differently, the case at hand is distinguishable from those that Buffington cites.  In the cited cases, the disputes revolved around a presentence report or criminal judgment that contained an error as revealed by comparisons to other, external sources, *e.g.,* the judge's intention in imposing a sentence or

the probation officer's knowledge in preparing the PSR. *See, United States v. Williams,* 777 F.3d 909, 910 (7th Cir. 2015) (stating that the petitioner's sentence "accurately carries out the district judge's decision" and that the presentence report does not contain a clerical error as "whether the author of the report accurately understood the nature of one of Williams's older convictions (which affects whether he is a career offender) is a substantive matter"); *United States v. Johnson,* 571 F.3d 716, 718 (7th Cir. 2009) (finding no correctable error when "the PSR's preparer noted that she would use a conservative estimate of the drug amount range for the relevant drug period; ultimately, a higher reported amount was used"). Rule 36 does not allow for the substitution of information from these outside sources when those substitutions concern matters deemed substantive and not clerical. *See, e.g., United States v. Lawrence,* 535 F.3d 631, 636 (7th Cir. 2008) *overruled on other grounds by United States v. Taylor,* 778 F.3d 667, 671 (7th Cir. 2015) ("Here, the district court modified the sentence by substituting the words 'is less than' for the word 'exceeds.' The corrected sentence reflected the parties' and the court's intent. However, . . . [t]he error cannot be deemed a clerical error under Rule 36. . . .").

Here, in contrast, the dispute is over a single document that contains internally inconsistent pieces of information. The question is then which piece of information (if any) should be deemed operative. The PSR contradicts itself and so cannot be left as is. Instead, if the Court thinks that the report contained an exact drug amount that was adopted at sentencing, then it must say which drug amount this is and so strike out the other two quantities, which it also (and equally) adopted in its Statement of Reasons.

On the strength of the record, however, the Court does not think it adopted a particular numerical value from the PSR as a factual finding as to the precise amount of drugs involved. None of these numbers were even mentioned at the sentencing hearing. This matters because if "the district court did not make a factual finding as to quantity at [the defendant's] original sentencing *hearing*, the court was required [and so free] to make such a finding in adjudicating his § 3582(c)(2) motion." *United States v. Davis,* 682 F.3d 596, 615 (7th Cir. 2012), *overruled on other grounds by Taylor,* 778 F.3d at 671, (emphasis added). Moreover, "a new factual finding on a § 3582(c)(2) motion is appropriate so long as it is not inconsistent with the district court's findings at the original sentencing *hearing*." *Id.* (emphasis added).

Accordingly, the Court now makes a finding as to the drug quantity so that it can determine what Buffington's offense level would be under the new Guidelines. *See, Dewayne Hall,* 600 F.3d at 876 ("[N]ew findings may be necessary where, as here, the retroactive amendment to the guidelines altered the relevant drug-quantity thresholds for determining the defendant's base offense level."); *United States v. Mark Hall,* 582 F.3d 816, 818-19 (7th Cir. 2009) (similar). In so doing, the Court considers the record as a whole. *See, Dewayne Hall,* 600 F.3d at 876 ("[I]n ruling on a § 3582(c)(2) motion, the district court may consider the record as a whole. . . ."); *United States v. Woods,* 581 F.3d 531, 538-39 (7th Cir. 2009), *overruled on other grounds by Taylor,* 778 F.3d at 671, (noting with approval the fact that the district court "examined the record as a whole, considered the defendants' motions, the government's responses, and the addenda to the PSRs").

Based on what the Court said at the sentencing hearing holding Buffington accountable for "perhaps up to 1,000 kilograms of cocaine," the details in the PSR supporting the drug quantities as being 978 kg of cocaine and 3 kg of heroin, and the Government's consistent position throughout the proceeding that the quantity of cocaine attributable to Buffington was "more than 1,000 kilograms of cocaine," the Court

now finds that Buffington was responsible for at least 450 kg of cocaine. This is consistent with the Court's previous finding that Buffington was a level 38 offender under the old Guidelines, meaning that he was responsible for no less than 150 kg of cocaine. *See, e.g., United States v. Russell,* 562 F. App'x 529, 531 (7th Cir. 2014) ("[A] district court may make new factual findings if they are consistent with its previous findings.") (citing *Davis,* 682 F.3d at 612).

Ergo, Buffington's offense level remains at 38. The 782 Amendment thus had no effect in lowering his sentencing range, and the Court is not at liberty to grant him any relief under § 3582(c)(2). *See, e.g., Richardson v. United States,* No. 94-CR-187-1, 2016 U.S. Dist. LEXIS 93544, at *3 (N.D. Ill. July 19, 2016) ("[B]ecause the sentencing range upon which Petitioner was originally sentenced is not lowered by Amendment 782, modification of Petitioner's imposed term of imprisonment pursuant to 18 U.S.C. § 3582(c)(2) is not authorized."). Buffington's motion for relief "begins and ends with step one." *United States v. Koglin,* 822 F.3d 984, 986 (7th Cir. 2016).

### B. Whether a Reduction in Sentence Is Warranted

Alternatively, the Court finds that even if it had the authority to consider Buffington's request for a sentence reduction, it should decline to grant any such reduction.

Buffington has not given the Court a reason consonant with the factors in 18 U.S.C. § 3553(a) to grant him relief. He seems to have forgotten that "a section 3582(c)(2) modification is discretionary, even for a defendant whose Guideline range has been retroactively lowered." *United States v. Cunningham,* 554 F.3d 703, 707 (7th Cir. 2009); *see also, United States v. Young,* 555 F.3d 611, 614-15 (7th Cir. 2009).

While § 3553(a)'s factors are numerous, the Court considered them when it imposed the sentence that Buffington now seeks to change. It specifically found that a 238-month sentence was appropriate because of the "very, very, serious" nature and circumstances of the offense, which made it "one of the most egregious cases" before the Court. *See,* S. Tr. 49:13-14 ("This is one of the most egregious cases from a number of standpoints."); 50:17-21 ("[T]his is a very, very, very serious crime."); 52:13-22 ("[T]he nature and circumstances of the offense [are] very, very serious. . . ."). Of course, one of the things that was so egregious about Buffington's conduct was the "literal size" of his drug operation. *See,* S. Tr. 49:13-14; 51:2-9. But even if the Court now holds Buffington responsible only for the lesser amount of 364 kg of cocaine and 1,800 g of heroin, this still does not change its conclusion that he was "a part of a very, very bad business, which . . . feeds the drug

habits and creates drug habits among some of our young people and not-so-young people." *See,* S. Tr. 49:19-22 ("Well, a lot of people's children are on drugs, and a lot of them probably because of this particular drug conspiracy, because you put so much of this poison out of the street."); 51:5-15 ("[Y]ou're a part of a very, very bad business, which the net result is that it feeds the drug habits and creates drug habits among some of our young people and not-so-young people. And it's really – it's hard for me to find much good about it.").

Moreover, the Court imposed the sentence it did for reasons other than the size of Buffington's drug operation. The Court took note of the fact that Buffington "had skills," "w[as] able to win basketball scholarships to . . . more than one school," was "able to get into college," and "could have made something for [himself]." *See,* S. Tr. 51:24-52:8. Instead, he chose to sell drugs. Further, he involved his brother, an addict, and his mother, a woman who "worked hard to take care of [him]," in the illegal enterprise. *See,* S. Tr. 49:23-24; 51:24-25. The Court characterized Buffington's involvement of his mother, whom the Court then had to sentence, as "the worst thing" Buffington did. *See,* S. Tr. 50:4-7, 15-18 ("Some of the – the worst thing is to get your own mother involved. I had to sentence your mother. And that was painful, I will tell you.").

None of these facts supporting the Court's original sentence have changed. Indeed, Buffington made no effort to say that anything is different today than when the Court first sentenced him. He does not mention how he has spent his time in prison, what he has been able to accomplish within that environment, or even if he has managed to stay out of trouble. *See,* 18 U.S.C. app. § 1B1.10 n.1(B)(iii) (listing a defendant's post-sentencing conduct as a factor that may be considered in determining whether a reduction in the defendant's term of imprisonment is warranted). Buffington only generically asserted that "[a] 28-month reduction is warranted under the moral and legal principles encompassed in § 3553." ECF No. 17 at 3-4. He does not say why that is.

As far as the Court can tell, only time has passed. Buffington is now older. But he was 44, not a young man, when the Court first sentenced him, and the Court already took into account his age when it imposed the term of imprisonment. *See,* S. Tr. 53:2-10 ("The Court: Now, you're, what, 44 years of age, 45? Buffington: Yes. The Court: So you're not a young person."). Furthermore, the Court knew that Buffington would one day be an old man in prison when it announced the sentence. For the Court to change its mind now because the inevitable has arrived would only be time-inconsistency at play.

In sum, Buffington has not given the Court any reason to exercise its discretion and grant him the relief he seeks. As such, either as a matter of course under step one, or as a matter of choice under step two, the Court orders that Buffington's sentence stand.

### III. CONCLUSION

For the reasons stated herein, Buffington's § 3582(c)(2) Petition [ECF No. 1] is denied.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Dated:4/12/2017